IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CASSANDRA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-104 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Cassandra Johnson appeals the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I. BACKGROUND

Plaintiff is a single female, fifty-two years of age. R. 143. She graduated from high school while enrolled in special education classes and consistently received C's, D's, and F's. R. 197-199. She never married and has always lived with her mother. R. 50. Although

Plaintiff worked for a number of years because her mother was able to find her employment, her work was always sheltered and unskilled. R. 54-55, 61. Consistent with these indicators, her IQ score is 61, accompanied by a diagnosis of "mild mental retardation." R. 251, 253.

Plaintiff protectively applied for DIB and SSI on December 5, 2011, alleging a disability onset date of January 1, 2009. Tr. ("R."), pp. 137-42, 143-49. The Social Security Administration denied Plaintiff's applications initially, R. 80-83, and on reconsideration, R. 91-94. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on April 23, 2013, R. 47. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Nancy Hayward, a Vocational Expert ("VE"). Id. On September 19, 2013, the ALJ issued an unfavorable decision. R. at 14-23.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: fibromyalgia, polyarthalgias, left eye blindness, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to unskilled work consisting of no more than frequent balancing, stooping,

> kneeling, crouching, crawling and climbing of ramps/stairs. She should never climb ladders, ropes or scaffolds. She can frequently tolerate moving mechanical parts, operate a motor vehicle and only occasionally be exposed to unprotected heights. She should perform no job requiring binocular vision or fine visual acuity.
>
> 5. The claimant is capable of performing past relevant work as a Cleaner, housekeeping. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

R. at 16-22.

When the Appeals Council denied Plaintiff's request for review, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because (1) Plaintiff meets 12.05(C) because she has the requisite IQ score with deficits in adaptive functioning, and (2) the ALJ erred in finding Plaintiff could perform past relevant work as a cleaner and a housekeeper although she never worked as either a cleaner or housekeeper. (Doc. no. 11, pp. 9-17, "Pl.'s Br.") The Commissioner argues Plaintiff does not meet 12.05(C) because Plaintiff does not have the requisite deficits in adaptive functioning, and that a scrivener's error alone does not require a remand. (Doc. no. 12, pp. 3-8, "Comm'r's Br.")

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The Criteria for Listing 12.05(C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(C) is met when: "[There is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

### B. The ALJ's Determination Plaintiff Lacked Deficits in Adaptive Functioning is Not Supported by Substantial Evidence.

The ALJ addressed whether Plaintiff met Listing 12.05(C) at step three and accepted Dr. Gayer's finding that Plaintiff had an IQ score of sixty-one. R. 17. Despite the low IQ score, the ALJ determined Plaintiff did not meet Listing 12.05(C) because she lacked deficits in adaptive functioning as exhibited by Plaintiff's work history, her ability to prepare simple meals, shop, perform light household chores, and socially interact. R. 18. However, the ALJ made no mention of Dr. Gayer's adaptive functioning assessment, Plaintiff's educational records, and functional third party reports which indicate Plaintiff has numerous deficits in adaptive

6

functioning.

On February 7, 2012, Plaintiff saw consultative examiner Dr. Harvey Louis Gayer for a psychological status exam. R. 246. Dr. Gayer noted Plaintiff was in special education, and after a battery of tests, determined Plaintiff had a full scale IQ score of sixty-one. R. 251. Dr. Gayer opined the score was valid assessment of Plaintiff's current functioning because Plaintiff put forth adequate effort on all tasks, and was forthcoming and honest during the evaluation. R. 253. Dr. Gayer diagnosed Plaintiff with "mild mental retardation," and noted Plaintiff's academic testing indicated Plaintiff scored in the bottom 1% for both word reading and mathematical computation. R. 251, 253.

Dr. Gayer's evaluation also included an adaptive functioning assessment, completed by Plaintiff's sister to determine Plaintiff's current level of adaptive functioning. R. 252. The adaptive functioning assessment indicated Plaintiff had the lowest possible score in the adaptive skills of communication, community use, functional academics, leisure, and self-direction. Id. Plaintiff also scored in the lower range for self-care, but her social, home living, and health and safety scores were average. Id. Dr. Gayer opined that Plaintiff's general adaptive composite of sixty was in the extremely low range, suggested impaired adaptive functioning, and was only above .4% of individuals her age. Id.

Although it is clear that the ALJ considered portions of Dr. Gayer's report, the ALJ failed to offer any explanation for accepting the portions of the report that supported his conclusion but giving no weight to the portions of the report suggesting that Plaintiff had deficits in adaptive functioning. Significantly, the ALJ completely failed to mention or

7

address Dr. Gayer's adaptive functioning evaluation which indicated Plaintiff could only function at a level above .4% of individuals her age. R. 252. "It is not enough to discover a piece of evidence which supports [the administrative] decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." McCruter, 791 F.2d at 1548.

Furthermore, the ALJ did not address or mention Plaintiff's academic background or third party assessments which demonstrate deficits in adaptive functioning. A letter dated May 1, 2012, from Paula Atchison, Special Education Secretary at Wilkes County Schools indicated Plaintiff was enrolled in special education during high school, and "that she worked hard in school but was several grade levels behind." R. 197. Although Plaintiff's special education file was likely destroyed in a fire, Plaintiff's grades demonstrate her limitations. R. 198-99. Throughout elementary, middle, and high school, Plaintiff received numerous C's, D's, and F's despite being several grades behind. R. 199.

The severe nature of Plaintiff's mental limitations is also evident from the third party function report completed by Ms. Christina Johnson, Plaintiff's mother whom Plaintiff has lived her entire life with. R. 176. Ms. Johnson reported that she has to frequently remind Plaintiff to wash her hair, bathe, and to take her medication. R. 178. Ms. Johnson reported Plaintiff never learned how to drive an automobile. Id. Furthermore, Ms. Johnson noted Plaintiff is unable to manage her personal finances. R. 179. Specifically, Ms. Johnson reported Plaintiff could not pay her own bills because she does not understand how to write checks. Id. Consistent with this opinion is Dr. Gayer's finding Plaintiff would need a payee if she was awarded benefits. R. 253.

Although the ALJ and Ms. Christina Johnson noted Plaintiff could make sandwiches, shop, watch television, go to church, and converse with others, the Court notes that under Eleventh Circuit law, "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997); see also Holman v. Barnhart, 313 F. Supp. 2d 1265, 1270 (N.D. Ala. 2004) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled.") (internal quotation marks and citation omitted).

The ALJ and the Commissioner point to Plaintiff's extensive work history as evidence she does not lack deficits in adaptive functioning. R. 21; Comm'r's Br. 6. However, the mere fact that Plaintiff has held jobs is not dispositive of a finding Plaintiff lacks deficits in adaptive functioning. See Burgans v. Astrue, 2:08-cv-386-CSC, 2010 WL 1254299, at *6 (M.D. Ala. Mar. 26, 2010). As a review of the record suggest, Plaintiff's work history is not inconsistent with the adaptive functioning of an intellectually disabled person.

Here, Plaintiff only attained employment because her mother arranged her employment for her. R. 63-64. Plaintiff worked for some time at a sewing plant, placing "tickets on pants, and put[ting] belts in pants, and press[ing] pants." R. 54-55. Her work at the plant was limited to unskilled labor as Plaintiff testified she never did any actual sewing. R. 55. After she was laid off from the sewing plant, Plaintiff worked at a sprinkler plant assembling sprinklers. R. 61. Again, her work was arranged by her mother and was unskilled. Because there is no record evidence these jobs are beyond the reach of an intellectually disabled person, the ALJ erred in

relying on Plaintiff's work history to find that Plaintiff lacked deficits in adaptive functioning. See Ambers v. Heckler, 736, F.2d 1467, 1468 (11th Cir. 1984) (claimants work history did not rebut her presumptive intellectual disability); Harrell v. Colvin, No. 14-CV-20513, 2015 WL 574006, at *8 (S.D. Fla. Feb. 11, 2015) (finding ALJ's reliance on unskilled work history did not demonstrate lack of deficits of adaptive functioning); Durham v. Apfel, 34 F. Supp. 2d 1373 (N.D. Ga. 1998) (rejecting ALJ's reasoning that claimant's forty year work history as tire repairer, laborer, kitchen helper, were inconsistent with intellectual disability claim).

In sum, Dr. Gayer's evaluation of Plaintiff's IQ and functional deficits, Plaintiff's school records, and third party functional assessments all suggest she suffers from deficits in adaptive functioning. The ALJ's failure to address or mention these key pieces of evidence in his analysis of Plaintiff's deficits in adaptive functioning results in a disability determination that is not supported by substantial evidence. Accordingly a remand is warranted.[1]

## IV. CONCLUSION

Because the ALJ's finding that Plaintiff did not meet Listing 12.05(C) because she lacked deficits in adaptive functioning was not supported by substantial evidence, this case should be remanded to the Commissioner for further consideration. The Court thus **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further

---

[1] In light of its determination that the Commissioner's decision should be remanded, the Court need not reach Plaintiff's remaining contentions. Of course, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluating process and in compliance with the applicable regulations and case law in all respects.

consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 26th day of May, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA